UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DIANA DIGGS,

          Plaintiff,

v.                                                          Case No.  8:07-cv-268-T-24 MSS

BAYCARE HEALTH SYSTEMS, INC.,

          Defendant.

_____/

## O R D E R

This cause comes before the Court on Defendant's Motion for Summary Judgment. (Doc. No. 33.)  Plaintiff has filed a response in opposition.  (Doc. No. 44.)

**I.**        **Factual Background**

This case involves race discrimination, hostile work environment, defamation, and conspiracy to defame claims that arose from Plaintiff Diana Diggs' ("Diggs") employment with Defendant BayCare Health Systems, Inc. ("BayCare").  Diggs, an African American female, began working with St. Joseph's Hospital (which later became BayCare) in 1976, and was employed there in various capacities until she was terminated in October of 2006.  From at least 2002 to 2006, Diggs worked for BayCare first in the customer services department and then in the cash application department.  (Diggs Depo. at 21-24, 37.)  Beginning in 2002, Diggs' manager was Penny Perez.  (Id. at 23.)  Penny Perez's supervisor was Bob Lovell.  (Perez Depo. at 5.)

Diggs first felt that she was being discriminated against in May of 2002, when some co-workers accused her of making an inappropriate and offensive comment regarding another co-worker's sexuality.  (Diggs Depo. at 33-35.)  Diggs was disciplined by her manager, Penny

Perez, in the form of a "counseling," and Diggs signed a document called a "Coaching/Counseling Record," which documented the complaint and counseling.  (Id. at 35-36, Exh. 1.)  After this incident, Diggs wrote a letter to Ms. Perez, to be included with the Coaching/Counseling Record, which stated that she felt her co-workers fabricated the complaint. (Id., Exh. 2.)  Diggs never appealed the counseling, never filed a complaint with the Equal Employment Opportunity Commission ("EEOC") regarding the incident, and never filed a complaint with the Florida Commission on Human Relations ("FCHR") regarding the incident. (Id. at 38-39.)  Diggs never pursued any of these actions because she feared retaliation, even though no one ever made any comment to her indicating that she would be retaliated against for filing such a complaint.  (Id.)

The next time Diggs felt that she was discriminated against was when she first transferred to the cash application department and a co-worker said something to the effect of, "I know she won't work with us because Joe don't hire black people."[1]  (Diggs Depo. at 39-40.)  Diggs could not remember who made the comment and never reported the incident to her supervisor or anyone in Team Resources.[2]  (Id. at 43.)  Diggs never reported this incident to the EEOC or any other administrative agency.  (Id. at 44.)   Diggs knew that BayCare had policies against discrimination and harassment, and also knew that BayCare had procedures in place for employees to file complaints of discrimination or harassment.  (Id. at 43.)   However, she failed to take advantage of any of these procedures because she feared retaliation, even though no one ever made any comment to her indicating that she would be retaliated against for filing a

---

[1]It is not clear from the evidence exactly when Diggs transferred to the cash application department.

[2]Team Resources appears to be the name of BayCare's human resources department.

complaint.  (Id. at 44.)

Diggs next felt discriminated against shortly after she began working in the cash application department, when she found out that Joe Perry (a coordinator for the department) had told the other employees working in the cash application department not to speak to Diggs. (Diggs Depo. at 44.)  Diggs was given this information by a co-worker in the department, Jennifer Gilmer.  (Id. at 45.)  Diggs stated that Ms. Gilmer had informed her that Mr. Perry had told her not to speak to Diggs.  (Id.)  Diggs did not know whether Mr. Perry also gave other employees the same instruction, and no one else ever told her that Mr. Perry had made a similar comment to them.  (Id.)  Diggs also did not know why Mr. Perry allegedly gave such instruction to Ms. Gilmer, and Ms. Gilmer never mentioned anything about Diggs' race.  (Id.)  Diggs stated that she complained to Ms. Perez about this incident, but that nothing ever happened as a result of her complaint.  (Id. at 46.)

Diggs also stated that she generally felt discriminated against by Ms. Perez, because Ms. Perez would not engage in cordial "small talk" type conversation with her like she would with the other employees.  (Diggs Depo. at 51-53.)  However, Diggs stated that when Ms. Perez did speak to her, she was never offensive and never made any racial remarks.  (Id.)

The next time Diggs felt she was discriminated against was in October of 2005, when a co-worker, Sharon Sandal, gave her some Halloween candy Diggs found offensive.  (Diggs Depo. at 53.)  The offending candy was a box of marshmallow "Peeps" that were in the shape of ghosts.  (Id. at 54.)  When Ms. Sandal gave Diggs the candy, she told Diggs to "peep that from the hood."  (Id.)  Diggs was offended by both the comment and the candy, which Diggs felt looked like the Ku Klux Klan.  (Id.)  It is not clear what Diggs interpreted "peep that from the hood" to mean.  Diggs complained about this incident to Diane Higgins, a manager.  (Id. at 56.)

3

Ms. Higgins brought the complaint to the attention of Ms. Perez, who then called Diggs into a

meeting.  (Id.)  During the meeting, Ms. Perez told Diggs that Team Resources would handle the

incident.  (Id. at 57.)  Ms. Perez stated that an investigation was conducted after Diggs lodged

her complaint about the candy.  (Perez Depo. at 33.)  This investigation consisted of interviewing

Diggs, Ms. Sandal, and the other employees that were identified as witnesses.  (Id.)  The result of

this investigation was that Diggs' complaint was determined to be "unfounded" or

"unsubstantiated" because Ms. Sandal denied making any offensive comments and there were no

witnesses to the incident.  (Id. at 34.)  Diggs never reported the incident to Team Resources

directly, and never reported it to the EEOC or any other administrative agency.  (Diggs Depo. at

58.)  Again, Diggs stated that she never filed any reports because she feared retaliation, even

though no one ever made any comment to her indicating that she would be retaliated against for

filing a report or complaint.  (Id.)

The next time Diggs felt discriminated against was in October of 2006, when she was

terminated from BayCare.  The facts surrounding Diggs' termination from BayCare are as

follows: on or about October 10, 2006, Aisha Wade contacted her supervisor, Robin Morris, to

lodge a formal complaint about Diggs' behavior towards her.  (Morris Depo. at 10.)  Ms. Wade

complained that she felt as though Diggs had engaged in aggressive behavior, including

threatening to hit her with a door, forcefully pushing a door into her, staring at her, following

her, and using profanity.  (Wade Depo. at 8, 10, 12, 20-22, 26, 28, and Exh. 1.)  Around the same

time that Ms. Wade lodged her complaint, Ada Andino also contacted Ms. Morris to lodge a

formal complaint about Diggs' behavior towards her.  (Morris Depo. at 11-12.)  Ms. Andino

complained that she felt as though Diggs was trying to intimidate her, and that Diggs claimed to

have a knife, tried to hit her with a door, intentionally bumped into her in the hallway, and used

4

profanity.  (Andino Depo. at 8-11, 13,15,18, 27, 30, and Exh. 1.)

Upon receiving these complaints, Ms. Morris contacted Diggs' supervisor, Penny Perez. (Morris Depo. at 10, 14.)  Ms. Perez then contacted her supervisor, Bob Lovell, and Krista Sikes, the manager of Team Resources.  (Perez Depo. at 16.)  In response, Ms. Sikes launched an investigation into the allegations made by Ms. Wade and Ms. Andino.  (Sikes Aff. at 1.)  Ms. Sikes' investigation included interviewing various employees, including Diggs, Andino, and Wade regarding Diggs' behavior in the workplace.  (Sikes Depo. Vol. II at 75.)  Ms. Sikes also reviewed Diggs' entire personnel file.  (Id. at 76.)  On October 19, 2006, based on the information gathered during her investigation, Ms. Sikes decided to suspend Diggs pending the outcome of the investigation.  (Id., Diggs Depo. at 63.)  On October 24, 2006, Ms. Sikes and Ms. Perez called Diggs to inform her that she was terminated from BayCare.  (Diggs Depo. at 70-71, Exh. 4.)  Ms. Sikes' stated reason for terminating Diggs was because she found that Diggs had created and sustained a hostile work environment, in violation of BayCare's policies.  (Diggs Depo., Exh. 4.)

## II.    **Procedural Background**

On October 26, 2006, Diggs filed a Charge of Discrimination with the EEOC, stating that she was discriminated against on the basis of her race.  (Diggs Depo., Exh. 5.)  In support of her charge of discrimination, Diggs stated that the accusations made against her were false, that Ms. Perez did not like her for "some unknown reason," and that BayCare used the false accusations to terminate her.  (Id.)  It is not clear whether the EEOC issued Diggs a notice of right to sue, as neither party filed a notice, and neither party ever made reference to a notice.

On May 4, 2007, Diggs filed her amended complaint, alleging four separate causes of action.  (Doc. No. 10.)  Count I of the amended complaint alleges that Diggs was discriminated

against on the basis of race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"),

Count II alleges that BayCare subjected Diggs to a hostile work environment in violation of Title

VII, Count III alleges that Diggs was defamed by BayCare, and Count IV alleges that BayCare

conspired to defame Diggs.  Baycare filed the instant motion on February 6, 2008.  (Doc. No.

33.)  On February 26, 2008, Diggs filed her response in opposition.  (Doc. No. 44.)

## III.    Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories and admissions on file, together with the affidavits, if any, show that the moving

party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The Court must draw all

inferences from the evidence in the light most favorable to the non-movant and resolve all

reasonable doubts in that party's favor.  See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir.

2006)(citation omitted).  The moving party bears the initial burden of showing the Court, by

reference to materials on file, that there are no genuine issues of material fact that should be

decided at trial.  See id. (citation omitted).  When a moving party has discharged its burden, the

non-moving party must then go beyond the pleadings, and by its own affidavits, or by

depositions, answers to interrogatories, and admissions on file, designate specific facts showing

there is a genuine issue for trial.  See id. (citation omitted).

## IV.    Analysis

BayCare argues that it is entitled to summary judgment on all of Diggs' claims.  The

Court will address each of BayCare's arguments in turn.

*Count I*

Count I of the amended complaint alleges that Diggs was discriminated against on the

basis of race, in violation of Title VII.  Title VII forbids an employer from "discriminat[ing]

against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  A plaintiff may establish a prima facie case of discrimination under Title VII on the basis of statistical proof of a pattern of discrimination, or on the basis of direct evidence of discrimination.  See Holifield v. Reno, 115 F.3d 1555, 1561 (11th Cir. 1997)(citations omitted).  In the usual case, however, direct evidence is not present, and so a plaintiff must instead rely on circumstantial evidence to prove discriminatory intent, using the framework established in McDonnell Douglas.  McDonnel Douglas Corp. v. Green.  411 U.S. 792, 802-04 (1973).  Under the McDonnell Douglas framework:

> [A] plaintiff establishes a prima facie case of race discrimination under Title VII by showing: (1) he belongs to a racial minority; (2) he was subjected to adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job.

Holifield, 115 F.3d at 1562.  Here, the third element is at issue.

BayCare argues that it is entitled to summary judgment on Diggs' claim for race discrimination because Diggs cannot establish a prima facie case of unlawful race discrimination.  BayCare contends that Diggs cannot offer evidence that BayCare treated similarly situated, non-minority employees more favorably, which Diggs must do in order to establish a prima facie case of unlawful race discrimination.[3]  Coutu v. Martin Cty. Bd. of Cty. Commissioners, 47 F.3d 1068, 1073 (11th Cir. 1995).  To make such comparison, Diggs must show that she and the non-minority employees are similarly situated in all relevant aspects.

_____

[3]BayCare also makes a very brief argument that Diggs was not qualified to perform her job, given her inability to get along with her co-workers.  See Williams v. Motorola, 303 F.3d 1284, 1290-91 (11th Cir. 2002).  On this argument, however, the Court agrees with Diggs that there is sufficient evidence in the record to create a genuine issue of material fact as to whether Diggs was qualified to perform her job.

Holifield, 115 F.3d at 1562 (citations omitted).  "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways."  Id.

Diggs points to Sharon Sandal as a similarly situated employee who was treated more favorably than Diggs.  Diggs refers to the Halloween candy incident that occurred in October 2005, and seems to argue, albeit poorly, that BayCare handled Diggs' complaint regarding Ms. Sandal's behavior less favorably than the way it handled complaints regarding Diggs' behavior. However, the undisputed testimony of Ms. Perez was that an investigation was conducted after Diggs lodged her complaint about the Halloween candy, and that her complaint was determined to be unfounded.  (Perez Depo. at 33-34.)  The Court finds that Diggs has failed to produce sufficient affirmative evidence to establish that Ms. Sandal was similarly situated in all aspects, or that her conduct was of comparable seriousness to the conduct for which Diggs was terminated.  Clearly, allegations of Diggs' physically threatening her co-workers is not of comparable seriousness to the allegation that Ms. Sandal gave Diggs a box of ghost Peeps and told her to "peep that from the hood."  Accordingly, Diggs has not established a prima facie case of unlawful race discrimination.

Even if Diggs had established her prima facie case, BayCare argues that it has articulated a legitimate, nondiscriminatory reason for terminating her employment, and Diggs has not raised a factual issue as to whether that reason was pretextual.  See Chapman v. AI Transport, 229 F.3d 1012, 1025 (11th Cir. 2000)("If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant's employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim.")

8

BayCare indicates that Diggs was terminated because she violated BayCare's workplace violence policy.[4] Krista Sikes, the Team Resources manager, testified that: "I looked at her file. I looked at everything, I took everything into consideration. I had two team members presenting to me that were frightened, that were very concerned about escalating actions and threats they perceived from Ms. Diggs." (Sikes Depo. Vol. II at 87-88.) Ms. Sikes further testified that she looked at the entire picture, and that only after having done so, she determined that there was a potential for escalation of workplace violence and decided to terminate Diggs. (Id. at 100.) Thus, the Court finds that BayCare has met its burden of articulating a legitimate, nondiscriminatory reason for terminating Diggs.

Diggs responds simply that she did not violate BayCare's policies. The crux of Diggs' argument is that BayCare's investigation was not thorough enough. According to Diggs, if BayCare had conducted a more thorough investigation, it would have seen that Diggs had not violated BayCare's policies, and that the fear Aisha Wade and Ada Andino attributed to Diggs was not real, but imagined. The Court finds that Diggs' argument is without merit. The reasonableness of BayCare's disciplinary action (here, termination) is not an issue so long as the action was not discriminatory. Abel v. Dubberly, 210 F.3d 1334, 1338 n.5 (11th Cir. 2000). "[F]ederal Courts do not sit to second-guess the business judgment of employers . . . a plaintiff may not establish that an employer's preferred reason is pretextual merely by questioning the wisdom of the employer's reason, at least not where, as here, the reason is one that might motivate a reasonable employer." Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir. 1997). All of the evidence on this issue shows that BayCare, after conducting a thorough

---

[4]BayCare's "Workplace Violence" policy specifically prohibits "conduct by anyone on company premises which is intimidating, hostile, threatening or causes actual physical harm to any other person." (Diggs Depo., Exh. 3.)

investigation, believed that Diggs had violated its workplace violence policy, and terminated her employment because of the violation.  Diggs has not produced any evidence to the contrary, and thus has not shown a genuine issue of material fact.

BayCare's motion for summary judgment on Count I of Diggs' amended complaint is **GRANTED**.

*Count II*

Count II of Diggs' amended complaint alleges that BayCare subjected her to a hostile work environment, in violation of Title VII.  A plaintiff wishing to establish a hostile work environment claim must show: 1) that she belongs to a protected group; (2) that she has been subject to unwelcome harassment; (3) that the harassment was based on a protected characteristic of the employee, such as race; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.  Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999).

BayCare argues that it is entitled to summary judgment on Diggs' claim for a hostile work environment because: (1) Diggs failed to exhaust her administrative remedies with regard to this claim; and (2) Diggs cannot meet her burden of proving a hostile work environment. Diggs does not attempt to respond to BayCare's argument, and the Court therefore considers this portion of BayCare's motion to be unopposed.  Accordingly, the Court finds that the undisputed material facts of record show that Diggs failed to exhaust her administrative remedies for her claim against BayCare for a hostile work environment, insofar as this claim is beyond the scope

of the Charge of Discrimination that Diggs filed with the EEOC.  The Court further finds that the undisputed material facts of record show that Diggs cannot meet her burden of proving a hostile work environment, because she cannot show that the perceived harassment: (1) was based on a protected characteristic such as race; (2) was sufficiently severe or pervasive to alter the terms and conditions of her employment and create a discriminatorily abusive working environment; or (3) that BayCare is responsible for such environment under either a theory of vicarious or of direct liability.  Mendoza, 195 F.3d at 1245.  BayCare's motion for summary judgment on Count II of Diggs' amended complaint is **GRANTED**.

*Count III*

Count III of Diggs' complaint alleges that she was defamed by BayCare.  "To recover in a defamation action, a plaintiff must show that the defendant published false and defamatory statements concerning him, without reasonable care as to whether those statements were true or false, which resulted in actual damage to the plaintiff."  American Airlines, Inc. v. Geddes, 960 So. 2d 830, 833 (3d DCA 2007)(citations omitted).  A defamatory statement only becomes actionable when it is published or communicated to a third person.  Id.  "When the entity alleged to have committed the defamation is a corporation, the courts have held that statements made to corporate executive or managerial employees of that entity are, in effect, being made to the corporation itself, and thus lack the essential element of publication."  Id.  Additionally, one who publishes defamatory matter concerning another is not liable for the publication if the matter is published upon an occasion that makes it conditionally privileged and the privilege is not abused.  Nodar v. Galbreath, 462 So. 2d 803, 809 (Fla. 1984)(citing RESTATEMENT (SECOND) OF TORTS § 593 (1976)).

BayCare argues that it is entitled to summary judgment on Diggs' defamation claim

because any allegedly defamatory statements were never published, and if they were published, they were conditionally privileged.  Diggs does not attempt to respond to BayCare's argument, and the Court therefore considers this portion of BayCare's motion to be unopposed. Accordingly, the Court finds that the undisputed material facts of record show that: (1) any defamatory statements that BayCare's managers made about Diggs to Diggs were not published; (2) any defamatory statements that BayCare's managers made about Diggs to other members of management were not published; and (3) any defamatory statements that BayCare's managers made about Diggs during the course of the investigation regarding Diggs' behavior were conditionally privileged and the privilege was not abused.  BayCare's motion for summary judgment on Count III of Diggs' amended complaint is **GRANTED**.

*Count IV*

Count IV of Diggs' complaint alleges that BayCare conspired to defame her.  A civil conspiracy requires: (1) an agreement between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) the doing of some overt act in pursuance of the conspiracy; and (4) damage to the plaintiff as a result of the acts done under the conspiracy. Raimi v. Furlong, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997).  "Additionally, an actionable conspiracy requires an actionable underlying tort or wrong."  Id.

BayCare argues that it is entitled to summary judgment on Diggs' conspiracy to defame claim because Diggs has no factual basis to establish an agreement to defame, and also because she cannot prove the underlying tort or wrong (defamation).  Again, Diggs does not attempt to respond to BayCare's argument, and the Court therefore considers this portion of BayCare's motion to be unopposed.  Accordingly, the Court finds that the undisputed material facts of record show that any defamatory statements made by BayCare were never published, and also

that there was no agreement to defame Diggs.  BayCare's motion for summary judgment on Count IV of Diggs' amended complaint is **GRANTED**.

**V.**      **Conclusion**

For the reasons stated herein, Defendant BayCare Health Systems, Inc.'s Motion for Summary Judgment (Doc. No. 33) is **GRANTED**.  The Clerk is directed to enter judgment in favor of Defendant and to close this case.  The pretrial conference that is set for July 23, 2008 is cancelled.

**DONE AND ORDERED** at Tampa, Florida, this 19th day of June, 2008.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record